**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SANDRA MORALES, )<br>as Shareholder on behalf of )<br>Threading Concepts, Inc., an )<br>Illinois Corporation, )<br> )<br>Plaintiff, )<br> )<br>v. )<br> )<br>MARIA DEL PILAR COELLAR and )<br>THREADING CONCEPTS PLUS, INC., an )<br>Illinois Corporation, )<br> )<br>Defendants. ) | No. |

**COMPLAINT**

Plaintiff Sandra Morales, in her capacity as shareholder of Threading Concepts, Inc., an

Illinois Corporation, by her attorneys, Robert H. Muriel and Daniel B. Wharton, and for her

complaint against defendants Maria del Pilar Coellar and Threading Concepts Plus, Inc., states as

follows:

**INTRODUCTION**

1.      This case is brought, *inter alia*, pursuant to section 43(a) of the Lanham Act (15

U.S.C. § 1125), section 12.56 of the Illinois Business Corporation Act (805 ILCS 5/12.56), and

various common law claims, by plaintiff Sandra Morales ("Sandra"), who is a 50% shareholder

of Threading Concepts, Inc. ("TCI").  Defendant Maria del Pilar Coellar ("Pilar") is also a 50%

shareholder and the president and registered agent of TCI, which Sandra and Pilar successfully

built together since 2006.  In late 2013, Pilar commenced her scheme while Sandra was out of

the country to illegally strip TCI of its name, assets and goodwill.  Pilar also usurped corporate

{00324026 }

opportunities, stole employees, and used TCI's assets to set up a competing business in virtually the same location where TCI had operated.

## PARTIES, JURISDICTION, AND VENUE

2.      Plaintiff Sandra Morales is an individual residing in Cook County, Illinois and a 50% shareholder of TCI.

3.      Defendant Maria del Pilar Coellar ("Pilar") is an individual residing in Cook County, Illinois.

4.      Defendant Threading Concepts, Inc. ("TCI") is an Illinois corporation which is no longer in good standing, but, upon information and belief, was in good standing as of the end of the 2013 calendar year.  Prior to Pilar's illegal actions, TCI operated a depilation, threading and personal services salon in Norridge, Cook County, Illinois.

5.      Defendant Threading Concepts Plus, Inc. ("TC Plus") is an Illinois corporation whose president is Pilar.

6.      This court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter in controversy arises under of the laws of the United States, namely section 43(a) of the Lanham Act.

7.      This court has *in personam* jurisdiction over defendants pursuant to 735 ILCS 5/2-209(a)(1), 2-209(a)(2), 2-209(a)(7), 2-209(a)(11), and 2-209(b)(4) because this action arises out of defendants' transaction of business within Illinois; tortious acts were committed within the State; and defendant Pilar breached her fiduciary duty to plaintiff within this State, among other reasons.

8.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to plaintiff's claims occurred in the Northern District of Illinois, Eastern Division.

## FACTUAL ALLEGATIONS

Background

9.      Sandra and Pilar incorporated TCI, a threading and other personal services salon, in August 2006, and were each 50% shareholders.

10.      TCI successfully operated at Harlem Irving Plaza (the "Mall"), 4104 N. Harlem Ave., Norridge, Illinois.

11.      In fact, prior to the formation of TCI, Sandra operated a silver merchandising business, IncaLand, Corp., out of the same Mall.  Sandra employed Pilar for some time at IncaLand.  When Sandra saw a new business opportunity for a depilation, threading and personal services salon, she asked Pilar to join her as a partner.

12.      TCI had a leased space, a recognized presence in the Mall, and a unique personal service niche.  It operated a storefront with the "Threading Concepts" name prominently displayed.  As with most personal service businesses, goodwill, name recognition, and client relationships were extremely valuable commodities to TCI.

13.      At the time of formation, Sandra and Pilar agreed to designate Pilar as the president of TCI; Sandra was the secretary and treasurer of TCI.  Sandra and Pilar were the two directors of TCI.

14.       Sandra and Pilar both provided their services and served in management roles at TCI from its formation in 2006 until at least September 2013.

15.      TCI entered into consecutive annual leases for space at the Mall.

3

16.     For example, on December 19, 2012, TCI entered into a successive one year lease for space at the Mall, the Lease Term being defined as January 1, 2013 through December 31, 2013 (the "TCI Lease").

17.     In the years following 2006, Sandra and Pilar operated TCI together and devoted their time and energy to building and maintaining the TCI business.  Specifically, Sandra and Pilar divided the schedule so that one of them was at the store at all times.  Sandra and Pilar each had young children, so they were flexible and each worked no more than 30 hours per week at the store.

18.     By 2013, TCI was a financially healthy business, and Sandra and Pilar were each drawing good earnings from TCI.

Threading Concepts Plus, Inc.

19.     Sometime in late 2010 or early 2011, Pilar approached Sandra and told her she planned to create a new business.  Pilar described the business as providing other services such as waxing, which were not offered by TCI, and made it appear to Sandra that the two businesses would be distinct.

20.     Sandra was not too pleased with Pilar's announcement as she feared that Pilar's commitment to TCI would likely wane.

21.     Months later, when the remodeling of Pilar's new business was almost completed, Pilar told Sandra that the name of the new business would be Threading Concepts Plus.

22.     Again, Sandra was unhappy that Pilar chose a name for her new company that was so similar to the name of their joint business.  But Sandra chose not to legally challenge Pilar's new business name because Sandra knew that Pilar's new business location (2007 N. Sheffield in Lincoln Park, Chicago) was far enough away from TCI's Harlem and Irving Plaza

location that it was not likely to be a significant competitive threat. Sandra was also under the impression at the time that the services offered by Pilar's new business would be different than the services offered by TCI.

23.     Pilar incorporated her new business on March 30, 2011. The name of that entity is Threading Concepts Plus, Inc. ("TC Plus").

24.     After Pilar opened her new TC Plus business, her hours at TCI decreased, as Pilar worked about two days per week at TCI, less than the three or four days per week she previously committed to TCI.

<u>Pilar's Usurpation of Corporate Assets and Opportunities</u>

25.     Sometime in late August or early September 2013, Sandra advised Pilar that she planned to travel to Ecuador, South America, her native country, to attend to certain personal and business matters. Sandra advised that she would be there for a few months. Sandra did not intend to relocate to Ecuador but rather she intended, for the foreseeable future, to split her time between Chicago and Ecuador. Indeed, Sandra's husband remained in Chicago.

26.     Pilar did not receive the information well, and they decided to meet with their accountant to help them resolve the dilemma.

27.     The accountant suggested as one option that Sandra sell her interest in TCI to Pilar. Sandra declined that suggestion as Sandra had spent many years building the TCI business with Pilar.

28.     The accountant then suggested that they hire a manager to take over the managerial duties previously assumed by Sandra. Sandra and Pilar agreed with that proposal.

29.     On or about September 4, 2013, Sandra met with an attorney who drafted an agreement memorializing the understanding of Sandra and Pilar (hereinafter "the Agreement"). Said Agreement is attached as Exhibit A.

30.     Pursuant to the Agreement, Sandra would stop providing her services to TCI and she would no longer receive a salary for her services.

31.     However, Sandra would remain as a 50% shareholder of TCI and would continue to receive 50% of the profits of TCI, after all expenses and salaries were paid.  (Prior to that time, Sandra and Pilar received both a salary for their services and split 50/50 any end-of-month profits from TCI operations.)

32.     Under the Agreement, Pilar agreed to deposit Sandra's 50% share of profits into a bank account designated by Sandra.

33.     The Agreement also stated that TCI would promote one of the employees (Sweety Patel) to perform the administrative services previously done by Sandra and that this new manager would be paid $15 per hour.

34.     Sandra gave the Agreement to Pilar.  Pilar said that she would review the Agreement with her lawyer but made numerous statements leading Sandra to believe that Pilar had no dispute with the Agreement and would sign it.  By October 2013, Pilar was still telling Sandra that she would give Sandra her signature on the Agreement, but Pilar never actually did so.

35.     Sandra spoke with the Mall's authorized representative in October 2013 in order to be kept informed of the TCI Lease status.  Sandra was assured that she would be kept informed of any changes in the lease.  Sandra expressed to the Mall representative that it was

Sandra's intention to stay involved in TCI's business and to continue to operate the business at the Mall.

36.     In November 2013, Pilar sent an email to Sandra informing her that the Mall decided not to renew the TCI lease for the 2014 year and reminding Sandra that the lease expired December 31, 2013.

37.     Around this same time, Pilar refused to pay Sandra her 50% share of any TCI profits or dividends.

38.     The new manager Sweety Patel had been directed to report to both Sandra and Pilar.  However, around this same time, Ms. Patel stopped informing Sandra about the TCI business.  Upon information and belief, Pilar directed Sweety to report to Pilar only and to stop informing Sandra about the TCI business.

39.     Upon information and belief, sometime between September and December 2013, Pilar spoke to a Mall representative without informing Sandra, and Pilar entered into a lease for a space in the Mall in Pilar's individual name or in the name of her new business TC Plus.

40.     Beginning in January 2014 and continuing to the present, Pilar and her business TC Plus operated a competing business at the Mall, approximately 30 feet from the storefront location where TCI operated its business.

41.     Pilar's competing business TC Plus offers depilation, threading and other personal services, just as TCI had.

42.     Between September and December 2013, without Sandra's agreement and without following any of the proper procedures for dissolving a corporation, Pilar shut Sandra out of TCI, took TCI's assets, clients, employees, supplies and goodwill, all in furtherance of Pilar's plans to have TC Plus operate its own competing business at the Mall.

43.     Then, without any notice to Sandra, Pilar intentionally and in breach of her fiduciary duties either allowed the TCI lease at the Mall lapse, canceled it, or failed to renew it after many years of consecutive renewals.

44.     The phone number for the TCI location at the Mall had been (708) 456-3390 for several years.  Pilar and TC Plus misappropriated that phone number for TC Plus, and continues to list that phone number on various websites including, but not necessarily limited to, the TC Plus webpage (www.threadingconceptsplus.com/salons.html), the TCI page on "Yelp (www.yelp.com/biz/threading-concepts-norridge), and the TCI page on "Facebook" (https://www.facebook.com/pages/Threading-Concepts/103576449708471).

45.     Upon information and belief, TC Plus operates its business with the same or substantially the same employees who used to work for TCI.

46.     In or around March 2014, despite Sandra's request that TCI file for an automatic extension of time for its 2013 corporate income tax returns so that Sandra could review and approve of the returns, Pilar caused the 2013 TCI federal and state tax returns to be filed.

47.     On page one of the TCI federal income tax return, the box indicating that it was the "final" return of the corporation was marked.  Pilar never consulted with Sandra or followed any of the corporate formalities necessary to properly dissolve the TCI corporation, as required by sections 12.05 *et seq.* of the Illinois Business Corporation Act (the BCA) (805 ILCS 5/12.05 *et seq.*).

48.     For the derivative claims, demand upon Pilar, a 50% shareholder acting as President and one of two directors of TCI, would have been futile.

**COUNT I**
**UNFAIR COMPETITION UNDER 15 U.S.C. 1125**
**THREADING CONCEPTS AGAINST PILAR AND TC PLUS**

49.     Plaintiff restates paragraphs 1 through 48 above as though fully set forth herein.

50.     From 2006 through the end of 2013, TCI was conducting business out of its storefront at the Mall under the name "Threading Concepts."

51.     Sometime between September and December 2013, Pilar, through action or omission, caused the TCI Lease to expire.

52.     At that time, across the hallway inside the Mall, a storefront operating under the name "Threading Concepts Plus" opened.

53.     The "Threading Concepts Plus" store operates with the same or substantially the same employees who used to work at the "Threading Concepts" store.

54.     Use of the name "Threading Concepts Plus" is likely to cause confusion to the public, especially former customers of the "Threading Concepts" store. The "Threading Concepts Plus" store operates in the same mall—just across the hall from the former "Threading Concepts" store—and employs the same employees as the former "Threading Concepts" store.

55.     The simple addition of "Plus" to the end of the name connotes additional products or services offered by the same entity who operated the "Threading Concepts" store, but the business entities are actually different, which causes confusion.

56.     Pilar and Threading Concepts Plus, Inc. willfully and maliciously adopted the "Threading Concepts" name for the "Threading Concepts Plus" store. Pilar knew that Sandra still intended for the Threading Concepts store to renew its lease and continue operating the store. Instead of renewing the lease, Pilar let the lease lapse, and Threading Concepts Plus, operated by Pilar, executed a new lease across the hall. By using the "Threading Concepts"

9

name, Pilar and Threading Concepts Plus, Inc. knew that the customer base served by the Threading Concepts store would likely not notice the change in ownership.

57.     The actions of Pilar, an officer and shareholder of TCI, against TCI in infringing its trademark have not been remedied by Pilar.

**COUNT II**
**BREACH OF FIDUCIARY DUTY**
**THREADING CONCEPTS AGAINST PILAR**

58.     Plaintiff repeats and realleges paragraphs 1 through 48 above as though fully set forth herein.

59.     As President, Director, and 50% shareholder of the closely held company TCI, Pilar owed fiduciary duties to TCI and Sandra.

60.     Pilar owes Sandra and TCI the duty of loyalty.

61.     Pilar owes Sandra and TCI the duty of care.

62.     Pilar owes Sandra and TCI the duty of disclosure.

63.     Pilar owed TCI a duty to deal openly, fairly and honestly with the corporation.

64.     Pilar owed a duty to TCI not to favor her interests over the interests of TCI, including, *inter alia*, by misappropriating TCI assets and control of the entity in order to benefit herself or TC Plus.

65.     Illinois law imposes upon 50/50 shareholders of a corporation the equivalent of partnership duties, as joint venturers, including the duty to exercise the highest degree of honesty and good faith in their dealings with TCI.

66.     Pilar violated her duty of loyalty, *inter alia*, by preferring her personal interests and business plans over the interests of TCI.

67. Pilar violated her duty of loyalty, *inter alia*, by operating a competing business for her own profit.

68. Pilar violated her duty of loyalty, *inter alia*, by taking TCI client lists and contact information and marketing her competing entity to those clients.

69. Pilar violated her duty of care, *inter alia*, by abandoning her obligations to TCI and devoting her time and energy to building her own, competing business in the same geographic location to her benefit.

70. Pilar breached her duty of disclosure when she decided to embark on a competing business without first informing Sandra and TCI of her plans and taking proper steps to resign as officer and director from TCI.

71. Pilar's duties to TCI continue through the present date because an individual's fiduciary duties, under Illinois law, remain as long as that individual is still a shareholder.

72. Pilar's breach of her fiduciary duties has proximately caused damage to TCI, *inter alia*, because TCI failed to realize income which it otherwise would have earned but for Pilar's actions and TCI has effectively stopped operating where it would reasonably have been expected to continue operating for many more years, at its most profitable period since the inception of TCI.

73. Pilar's breach of her fiduciary duties has proximately caused damage to Sandra, who has not received profits or dividends from TCI, which Sandra would have received but for Pilar's actions.

74. Sandra had a reasonable expectation of continued profits and dividends from TCI given its profits in 2013.

## COUNT III
## USURPATION OF CORPORATE OPPORTUNITY
## THREADING CONCEPTS AGAINST PILAR

75.     Plaintiff repeats and realleges paragraphs 1 through 48 above as though fully set forth herein.

76.     Sandra and Pilar built up TCI, including its client base and goodwill, between 2006 and 2013.

77.     Upon information and belief, between September and December of 2013, Pilar established a competing business, TC Plus and, upon information and belief, TC Plus is currently operating a business at the Mall providing depilation, threading and other personal services.

78.     At some point in 2013, Pilar stopped devoting her time and best efforts to fulfilling her duties to TCI and began planning and establishing her competing business.

79.     Pilar launched her competing business using the employees, supplies, funds, clients, goodwill and location of TCI's business.

80.     Pilar's competing business is located approximately 30 feet from TCI's prior location at the Mall.

81.     Pilar's actions have proximately caused damage to TCI, including, *inter alia*, lost income and the continuation of its goodwill.

## COUNT IV
## CONVERSION
## THREADING CONCEPTS AGAINST PILAR AND TC PLUS

82.     Plaintiff repeats and realleges paragraphs 1 through 48 above as though fully set forth herein.

83.     TCI has an absolute right to present possession and control of its property, including money, assets, supplies, books, records and other items which Pilar and, through Pilar, TC Plus have taken control of.

84.     Sandra has made demand upon Pilar for the property and further demand is futile since Pilar has embarked upon her scheme to open a competing business.

85.     Pilar's possession of TCI's property and her exercise of sole control over it is wrongful as she is barred by her fiduciary duties to TCI from taking TCI property and converting it to for her own personal use.

### COUNT V
### ACCOUNTING
### THREADING CONCEPTS AGAINST PILAR AND TC PLUS

86.     Plaintiff repeats and realleges paragraphs 1 through 48 above as though fully set forth herein.

87.     Pilar owed fiduciary duties to TCI and Sandra.

88.     Pilar had access to and took control of TCI monies, supplies, property, goodwill, employees, customer contact information and other things of value to Company.

89.     Pursuant to section 12.56(b)(6) of the BCA (805 ILCS 5/12.56(b)(6)), where the shareholders or directors of the corporation are deadlocked, or corporate assets are being misapplied or wasted, the Court may order an accounting.

90.     Sandra and Pilar, the only two Directors and Shareholders of TCI, are deadlocked.

91.     Pilar has misapplied and wasted TCI assets, including granting those assets to a competing business, TC Plus.

**COUNT VI**
**IMPOSITION OF CONSTRUCTIVE TRUST**
**THREADING CONCEPTS AGAINST PILAR AND TC PLUS**

92.     Plaintiff repeats and realleges paragraphs 1 through 48 above as though fully set forth herein.

93.     Pilar and TC Plus have taken and presently exert use and control over property which belongs to TCI.

94.     Pilar obtained TCI property in breach of her fiduciary duties to TCI and to Sandra.

95.     Allowing Pilar and TC Plus to keep the property wrongfully taken would be unjust.

96.     For much of the property, supplies, client contacts, goodwill, leasehold interests and other valuable assets of TCI, TCI has no adequate remedy at law.

WHEREFORE, for all of the reasons set forth in Counts I–VI above, Plaintiff Sandra Morales, derivatively as shareholder on behalf of Threading Concepts, Inc., prays that this Court grant the following relief:

1.     Imposing a permanent injunction barring Pilar or TC Plus from using or infringing upon the "Threading Concepts" trademark;

2.     Removing Pilar from her position as President and Director of Threading Concepts, Inc.;

3.     Ordering Pilar to provide an accounting to TCI for all income, expenses, profits, and losses of TCI and TC Plus, during the period September 2013 through the date of the accounting;

4.     Ordering Pilar to provide an accounting to TCI for all TCI assets, income, goodwill and opportunities diverted to Pilar or any new company, including TC Plus;

5.     Ordering Pilar to pay damages to TCI;

6.     Ordering that Sandra receive her fair share of the income of TCI;

7.     Imposing a constructive trust upon all property, monies, profits, supplies, goods and anything else of value taken from TCI by Pilar since she began breaching her fiduciary duties;

8.     Ordering that Pilar disgorge and return to TCI any and all salaries, profits, dividends and/or benefits earned by her from TCI and TC Plus during any time that she was in breach of her fiduciary duties;

9.     Imposing a constructive trust upon all property, monies, profits, supplies, goods and anything else of value earned by Pilar as a result of her breaches of fiduciary duties;

10.     Imposing a constructive trust upon all property, monies, profits, supplies, goods and anything else of value earned by Pilar as a result of her usurpation of TCI's opportunities;

11.     Imposing a constructive trust upon all property, monies, profits, supplies, goods and anything else of value earned by TC Plus;

12.     Ordering that Pilar pay the plaintiff's attorneys fees reasonably incurred in advancing the interests of TCI in this suit;

13.     Ordering that Pilar pay the plaintiff's costs of this action; and

14.     Order any further relief this Court deems just and appropriate under the circumstances.

Dated: December 16, 2014

SANDRA MORALES, as shareholder of
Threading Concepts, Inc.,

/s/ Robert H. Muriel

_____

By:  One of Her Attorneys

Robert H. Muriel (6216589)
Daniel B. Wharton (6310469)
MURIEL LAW OFFICES, LLC
223 West Jackson Blvd.
Suite 620
Chicago, Illinois 60606
(312) 602-1060